### KNEE v. KARMIN et al.

(District Court, S. D. New York. October 27, 1920.)

Patents ⬅328—1,231,382, for felt welts for gloves, valid and infringed.
The Knee patent, No. 1,231,382, for welts for gloves made of felt, and process for making the same, *held* not invalid for anticipation or prior use, and to disclose invention; also infringed.

In Equity. Suit by Louis Knee against Max Karmin and David H. Flanzer. Decree for complainant.

Decree affirmed, 274 Fed. 724.

T. F. Bourne, of New York City, for plaintiff.
J. G. M. Browne, of New York City, for defendants.

LEARNED HAND, District Judge. This is the usual suit in equity on a patent to Louis Knee, No. 1,231,382. All five of the claims in the patent are in suit, and infringement is not denied; so that the question depends entirely upon validity.

The object of the patent is to provide felt welts adapted to be sewed in the seams of gloves and other articles of apparel, to be strong and durable, readily manufactured, used, and shipped to manufacturers, and to include certain novel details of improvement and combination of parts which are described in the claims. I need not go into the claims in detail. The first four, which are for the product of the process described in claim 5, are substantially similar in character, and it would serve no purpose to distinguish the slight details of the different elements which they set forth. It is better to describe what the invention is.

At the time the invention was made the patentee supposed that he was the first person who had discovered the use of felt welts in the manufacture of gloves, and in that respect it turned out, after he got into the Patent Office, that he was mistaken, for as early as 1888 there had been an invention of precisely that sort by one Busby, No. 379,855. But it appears from the evidence that Busby's invention never came into active use. In heavy workmen's gloves there were always welts, but until the price of leather, during the Great War, became very high, it was more satisfactory and not too expensive to use leather, instead of felt, and so Busby's invention lay unused and apparently unnoticed. Mr. Knapik, who was well versed in the art, knew nothing of felt welts; so we may safely say that Busby's invention never bore any fruit.

---

That, I know, makes no difference, because it was there. The patentee was chargeable with it, and he can claim no invention by substituting felt for leather. Therefore his patent must rest (and the examiner made it rest) upon his manufacture of felt welts upon a single spool. This he did in the following way:

He placed a cardboard core upon the shaft of the well-known Adams machine; to this core he pasted the free end of a roll of felt a yard wide. The Adams machine then wound up the whole roll of felt upon itself; after this the roll was snugly covered with a piece of paper, pasted together so as to give a firm body to the roll. Then a rotary knife was placed upon the periphery of the roll, the roll was rotated in one direction and the knife in the other, and the knife was pressed down until it reached to, but not through, the core. The roll was then moved forward $11/64$ of an inch along the bar, and another slice was made, and so on until there were 40 slices along the whole roll. As in each case the knife did not cut the core, the resulting spool carried a set of 40 convoluted or wound felt strips, $11/64$ of an inch wide, all held upon an uncut cardboard core. This he packed and sent to the trade.

Coming, as it did, at a time when the price of leather was very high, this spool, after a slight hesitation on the part of the trade, met with so much favor that at the present time it has substantially, if not wholly, displaced the use of leather, and will continue to do so until leather becomes much cheaper than it now is. The plaintiff has about 95 per cent. of the trade. Shortly after plaintiff's goods came into the market, there appeared from Gloversville, N. Y., spools of felt welts, of about the same width, wound as any spool is wound, in one continuous strand. This has not successfully competed with the plaintiff's goods, and probably for the reason that it is not as convenient as is his, for his welts unroll without any rotation of the spool as a whole, and do not become tangled, as does the Gloversville spool.

The only art cited in the Patent Office, except the patent of Busby, were two other patents—one to Coe, No. 929,557, and one to Smith, No. 1,031,386. Coe's patent was for a roll of metallic leaf, in narrow convolutions, similar in general appearance to the plaintiff's felt welt; but the patentee prescribes that the core shall be cut through. Each of the rolls is therefore a small spool, and as the substance was of a kind which would readily break down, the patentee provided two guards on each side. It is quite clear that he did not think of leaving the core uncut and the metallic leaf all on one large spool.

Smith, who attempted a similar invention for metallic leaf, built up his core in a series of cylinders; but he did not (why, we do not know) cut the leaf when rolled upon the core into slices of the requisite width. Therefore we have, on the one hand, Smith contributing one part of the invention, and Coe contributing the other part, but neither of them combining, even in metallic leaf, the whole invention as the plaintiff combined it. As all three of these patents were cited by the examiner, I should have to be very clear before I held that there was no invention over them.

274 F.—46

There remains, then, the question of the prior art as applied to bindings. The patentee, like many others in New York, had made bindings for various kinds of clothing upon the Adams machine. The general practice was to cut through the core and separate the coils at once. Perhaps it required no invention, once one wanted to use felt welts made upon the Adams machine, to work out the idea of cutting only to the core; on that I need not pass. In any case, it so happens that there is no adequate proof in this case that any one had done it, either in the case of felt or of any other material. There is, to be sure, evidence of such a practice in the case of cambric and cotton bindings; but even in those cases the proof is not sufficient.

The first of these supposed uses is that of the defendant himself, who says that he at several times made up cotton spools on a single core. The only occasion where he specifies the date with any exactness is a sale to a man named Shapiro, in the city of New York, and this date he places in March, 1914, and attempts to corroborate himself by his ledger, which shows an entry of a sale made to Shapiro. This, he says, was made of binding material on a core, which was cut just as the plaintiff's was cut. In the first place, this necessarily rests upon his recollection, for the entry itself does not describe this feature of the article sold, nor indeed does it describe the article in any way at all.

But the date of the entry itself is very doubtful, and really, so far as it is a corroboration at all, depends upon whether you read the page on which it occurs as the first page of the ledger entries against Shapiro, or the second page. The two pages are numbered 88 and 89, and if one supposes that the entries were made in the sequence of the pages there is no reason to assume that the entry was not made in March, 1914. However, at the bottom of page 89 there occurs, apparently in the bookkeeper's handwriting, the words "see page 88," and that to my mind shows that the account was opened on page 89, and, when page 89 was filled, instead of turning over to page 90, the bookkeeper put the rest of the account on page 88. If she had done that, she would make just such an entry at the bottom of page 89 as she did. If one reads it in that sense the sequence of months is entirely consistent, but the year would necessarily be 1916.

The plaintiff's date of invention has been carried back of March, 1916; so it seems to me that the date on which the defendant relied is very far from being proved beyond a reasonable doubt, even if the entry itself was sufficient corroboration, which I do not think it is. So much for the defendant's use.

The only other two uses are of one Kulchinsky and of the plaintiff's own witness, Freydberg. Kulchinsky says he cut binding for sailors' collars in the way in which the plaintiff has done with felt. He places this date in an uncertain way. The first time he testified he said it was six or seven years ago. When he was cross-examined as to the way in which he fixed the date, he said that it was before he had moved from Division street, which was three years ago, and finally in his testimony he said that it was four, five, or six years

ago. It is perfectly clear that his recollection was uncertain as to how long before he moved from Division Street he did this. The witness, in my judgment, was an exceptionally honest witness; he was telling the truth so far as he could remember it, but he did not remember it accurately enough. Plaintiff's patent has now been dated back to October, 1915, and therefore it must be over five years ago to be a valid anticipation, and it is quite clear that, under the rigid rules which are applicable to proof of anticipation, the defendant cannot succeed. Therefore I do not accept this prior use.

The remaining prior use is of one Freydberg, called by the plaintiff, and, so far as I could see, also an exceptionally reliable witness. He said at a time which he places as eight years ago, although he has no means of fixing it definitely in his mind, that in one stage of the process of making a doubled binder he did not cut through the core. His process was this: On an Adams or similar machine he wound up the fabric, which was a heavy glazed cambric; then he made slices three-eighths of an inch apart, down to the core. He had another machine by which he could fold these three-eighths of an inch slices so as to make three-sixteenths of an inch slices. This second machine he called a gauge.

It is quite clear, from his own statement, that this was never an article of manufacture; it was but a step in a process of his own to make something else, and I think it does not come under the requirement of the statute, that the article must be either in public use or offered for sale. Apparently it was done only once in his shop, and, as I have said, as an intermediate step in the manufacture of another article, and it seems to me that it would be improper to say he had anticipated the invention, merely because in one stage of an incompleted process the spools were like the plaintiff's.

Therefore, in the case of all these prior uses, I must find that they are not proved, and the question therefore resolves itself into this: Was it invention on the part of the plaintiff, knowing the method of manufacture of the Adams machine in the case of cottons, cambrics, and so on, to stop the process as usually carried out and to make a new article of commerce? I have already said that, merely as a question of manufacture, once the need was suggested, perhaps that would not be invention; but it seems to me that to make this spool of felt for the purpose of felt gloves, an article which had never been made before, was invention. No one had thought of it. The need was pressing. It leaped at once into very marked approval of the trade, and at least one other manufacturer had tried it and had not succeeded.

I do not forget the fact that the general rule is that a mere change in material is not sufficient for a patent; but I must again recur to the fact that the plaintiff not only changed the material, but he made what was in fact novel. Novelty is established; the question is of invention, and that question must depend upon whether the plaintiff, in seeing the opportunity which the high price of leather gave, did not show an ingenuity which justified him in obtaining a patent in the slight modification of the use of the Adams machine, which turned

out something never made before, and extremely useful in that particular contingency. I think he did. For that reason it seems to me that I ought not to upset the conclusion of the examiner that this was a good invention. It may have a very limited life; when the price of leather falls again it may go out altogether, but, in my judgment, it took more than an everyday imagination to perceive the opportunity that the trade offered, and to meet it, as he has alone been able to meet it.

In making his invention he was undoubtedly very happily placed, because he was familiar with the kindred art of rolling of cotton and cambric bindings in a very similar way; but for one reason or another (just what it is impossible now to say) he was the first, and he alone thought of the modification which answered the needs of the moment. That, I think, is sufficient for invention.

Plaintiff may therefore take a decree, with costs, and the decree will be on all claims.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes